**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRENDA E. THOMAS,**<br>                    **Plaintiff,**<br><br>            **v.**<br><br>**DIVERSIFIED COMMUNITY**<br>**SERVICES, INC., OTIS L. BULLOCK,**<br>**JR., TALX UCM SERVICES, INC. D/B/A**<br>**EQUIFAX WORKFORCE SOLUTIONS,**<br>**TALX UCM SERVICES, INC., EQUIFAX**<br>**WORKFORCE SOLUTIONS,**<br>**DIVERSIFIED COMMUNITY**<br>**SERVICES, INC.,**<br>                    **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  20-3813** |

**MEMORANDUM OPINION**

Plaintiff Brenda Thomas alleges that she was unlawfully terminated from at-will employment at Diversified Community Services, Inc. ("DCS") shortly before she reached retirement age.  She filed suit in the Pennsylvania Court of Common Pleas against DCS and its executive director Otis Bullock (collectively, the "DCS Defendants"), as well as Talx UCM Services, Inc. ("Talx") and Equifax Workforce Solutions (collectively, the "Equifax Defendants"), which Thomas alleges provided human resources services to DCS in connection with her termination.  Thomas voluntarily dismissed her federal statutory claims after Defendants removed to federal court, and now moves to remand for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c).  Defendants oppose remand, contending that because Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, completely pre-empts Plaintiff's breach of contract claim the Court has original jurisdiction over the case.  For the following reasons, Thomas's motion for remand will be granted.

1

The following facts are drawn from the allegations of the Complaint and from the DCS Employee Handbook, which is referenced in and attached as an exhibit to the Complaint. *See Zgrablich v. Cardone Indus., Inc.*, 2016 WL 427360, at *4 n.2 (E.D. Pa. Feb. 3, 2016) ("In determining whether a plaintiff has artfully pled his suit so as to couch a federal claim in terms of state law, the Court is permitted to look beyond the face of the complaint" including to "various plan documents" (citations omitted)).

Thomas alleges that she worked at DCS, a Pennsylvania non-profit, for approximately 28 years. She was compensated with "a base salary of $30,160.00, plus bonuses, health and dental insurance, participation in a pension plan, and other employee benefits." DCS sets out its employment policies, procedures, and benefits in the DCS Employee Handbook. The Handbook contains a general disclaimer that DCS "adheres to the policy of employment-at-will," and states that the Handbook is "not contractual in nature" and that "the polices contained in this Employee Handbook . . . [are not] intended to create a contract of employment or a guarantee of benefits." Section 5 of the Handbook does, however, "summarize[] the current benefit plans maintained" by DCS, including, *inter alia*, a "health insurance benefit plan [] established from year to year by the Board of Directors," as well as a "403B Retirement Plan" in which "full or part time employee[s]" can participate.

In 2012, DCS hired Defendant Otis Bullock as Executive Director. Although Thomas and Bullock had "limited one-on-one contact," Thomas alleges that their meetings "were pleasant and without any enmity." On Bullock's direction, however, Thomas received a "Corrective Action Form" dated June 4, 2018, which "formed the basis for disciplinary action against [her]." Thomas alleges that this form contained "false information about the particular incident that was the subject of the disciplinary action, involving a single Head Start student's

family income verification," and stated incorrectly that Thomas had previously been placed on probation as a disciplinary measure.  In actuality, Thomas alleges, she was never disciplined during her 28 years at DCS, and she always received positive performance reviews.

Thomas had no opportunity to take corrective action.  On June 5, 2018, DCS summarily terminated her employment.  She alleges that Bullock "approved and overs[aw]" her termination, and that he ignored Thomas's several requests for a meeting after she was fired.  When Thomas was terminated, she was "between two and three years from eligibility for retirement and full vesting of her retirement benefits" provided by DCS.  The Corrective Action Form was pretextual, Thomas alleges, and the "real reason" for her termination was "her age and/or the fact that she would soon be entitled to full pension benefits upon retirement."

Thomas filed suit in the Court of Common Pleas against DCS, Bullock, and Equifax, asserting various state law claims as well as claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.§§ 621 *et seq*., and Section 510 of ERISA, 29 U.S.C. § 1140. Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441.  Shortly thereafter Thomas filed a notice of voluntary dismissal of her federal statutory claims and moved to remand to state court for lack of subject matter jurisdiction.  Defendants oppose remand, contending that Thomas's remaining breach of contract claim could have been brought as an ERISA claim and therefore arises under federal law for jurisdictional purposes.

When Defendants removed from the Court of Common Pleas, the Complaint explicitly asserted two claims under federal statutes, ADEA and ERISA.  Because a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and district courts have original jurisdiction to hear federal statutory claims as claims "arising under" the laws of the United States, 28 U.S.C. §

3

1331, Defendants' removal of the case was proper and the Court had subject matter jurisdiction over the case. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) ("Any civil action brought in state court may be removed by the defendant to the federal district court in the district where such action is pending, if the district court would have original jurisdiction over the matter" (citations omitted)); *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 n.3 (2003) ("a state claim can [] be removed through the use of the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provided that another claim in the complaint is removable"). Plaintiff subsequently dismissed her federal statutory claims, however, and the face of Plaintiff's complaint therefore now asserts only claims under state law.

Although Plaintiff moves to remand for lack of original jurisdiction, the dismissal of her federal statutory claims does not defeat subject matter jurisdiction here. "The fact that the federal claims that were the basis for the removal . . . were dropped during subsequent proceedings does not deprive the district court of jurisdiction, unless the federal claims were insubstantial on their face." *Felice v. Sever*, 985 F.2d 1221, 1225 (3d Cir. 1993) (internal quotation marks and citations omitted); *see also, e.g.*, *Bringa v. Roque*, 2015 WL 857884, at *5 (D.N.J. Feb. 27, 2015); *Yan v. Franklin Credit Mgmt. Corp.*, 2013 WL 2950652, at *2 (D.N.J. June 14, 2013). Pursuant to 28 U.S.C. § 1367(c)(3), however, following the dismissal of federal claims the Court can in its discretion decline the exercise of supplemental jurisdiction over pendent state law claims and remand the case to state court. *See also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate").

Here, however, Defendants contend that the case should not be remanded because a

4

federal claim remains in the case:  specifically, they argue that Plaintiff's breach of contract claim is pre-empted by ERISA Section 502(a)(1)(B).  The doctrine of complete pre-emption "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint," and applies where "Congress has expressed its intent to completely pre-empt a particular area of law such that any claim that falls within this area is necessarily federal in character."  *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999) (internal quotation marks and citation omitted).  "ERISA's civil enforcement mechanism, § 502(a), is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004) (internal quotation marks and citations omitted).

Section 502(a)(1)(B) provides that "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Under *Aetna Health Inc. v. Davila*, an "individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)" only where the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions."  542 U.S. 200, 210 (2004).  "Because the test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied."  *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (citation omitted).  The first prong of the *Davila* analysis is frequently disaggregated into the two separate inquiries of (1) statutory standing, "whether the plaintiff is

the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)"; and, (2) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011); *see also, e.g.*, *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017).

Defendants do not address any prong of *Davila*'s analysis. Instead, they posit that Plaintiff's breach of contract claim "mirrors" her dismissed ERISA claim because both claims "seek recovery of benefits due under an ERISA-governed plan." Plaintiff's breach of contract claim alleges that Defendants breached the Handbook by firing her in violation of DCS's progressive disciplinary procedures, thereby breaching their contractual obligation to provide benefits pursuant to Section 5 of the Handbook, and accordingly seeks reinstatement, opportunity to challenge DCS's disciplinary action, compensation for lost salary and benefits, and restoration of service time towards her pension plan. Plaintiff's dismissed ERISA claim was brought under ERISA Section 510, which makes it unlawful "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Because Section 510 provides that the "provisions of [Section 502] shall be applicable in the enforcement of this section," *id.*, a "state claim that falls within Section 510 is necessarily within Section 502" and can provide a basis for jurisdiction under the complete pre-emption doctrine, *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 677 (3d Cir. 2000). However, a "§ 510 claim for interference with benefits" – the ERISA claim Plaintiff asserted, then dismissed – "is not enforceable under § 502(a)(1)(B)," the provision Defendants rely on. *Eichorn v. AT&T Corp.*, 484 F.3d 644, 654 (3d Cir. 2007). Plaintiff's ERISA claim therefore

does not "mirror" her breach of contract claim, as Defendants construe it.

Defendants' summary presentation fails to overcome the doubtful application of the complete pre-emption doctrine here.  Because Defendants fail to establish that Plaintiff's breach of contract claim is, per the doctrine of complete pre-emption, a claim under federal law, they fail to establish that original jurisdiction over the case remains such that the case cannot be remanded.  *See also Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court" (citations omitted)); *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 445 (3d Cir. 2003) (removing defendant "bears the burden of proving the federal jurisdiction it seeks" (citation omitted)); *Khan v. Kaiser Found. Health Plan, Inc.*, 2011 WL 445940, at *4 (N.D. Cal. Feb. 3, 2011) (complete pre-emption not established where defendant failed to make any argument on second *Davila* prong).

Because this case is at the early stages of litigation and all federal claims have been dismissed, the Court declines to exercise supplementary jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (where federal claims are dismissed before trial "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so" (citations omitted)).  Accordingly, the motion to remand will be granted, and the case will be returned to the Court of Common Pleas.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

7